EDMOND SHINEFLEW V. STATE OF NEBRASKA.

FILED DECEMBER 6, 1935. NO. 29530.

Thomas E. Dunbar and Varro E. Tyler, for plaintiff in error.

William H. Wright, Attorney General, Paul P. Chaney and Lester A. Danielson, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an error proceeding, in which the plaintiff in

error, hereinafter called 'the defendant, was convicted of an assault with intent to commit rape. The jury deliberated some 63 hours before reaching their verdict. The defendant was sentenced to the penitentiary for a term of not less than three years nor more than five years.

The prosecutrix was 17 years of age, but previous chastity was not alleged nor proved. The evidence of the prosecution is to the effect that on January 26, 1935, prosecutrix met the defendant near the Overland theatre in the business district of Nebraska City; that he said he wished to speak to her, and they stepped into an alley, and he put a gag in her mouth and some instrument at her back, and told her he would "blow her insides out" if she did not obey him; that he ordered her to cross Seventh street, a street well lighted with electroliers, and also another street, at about 7:30 on Saturday evening, with many people on the streets, and that they passed a book-store that was well lighted, and continued up an alley, which was also lighted in the center of the block, and thus he compelled her to go to his home, where he fastened the door shut with a punch driven in by a hammer, the door being old and the lock out of repair. She testified that he knocked her down with his fist for the purpose of committing rape upon her, and that she struggled with him, and that this struggle continued for five and a half hours. That some time after midnight he sent her over to her home, which was just across the street.

When she reached home, her father called a doctor, who arrived about 1:30 a. m., and found that her breasts were red and that there were some marks on her hips, and some abrasions along her lips, and that her ears were red, and a marked tenderness in the right temporal region of her head. The doctor was asked what she said in regard to attempted rape, and his answer was: "I asked her about that and she said there was no rape or attempted rape and so I took her word for it."

The evidence discloses that prosecutrix had been employed to care for the defendant's home during the absence

of his wife, who with their four young children had been visiting relatives at Parsons, Kansas; that prosecutrix had started by washing and cleaning up his house on the Monday after his wife left; and that the two families had visited and played cards and were friendly. On the other hand, the wife of the defendant testified that she did not visit them, and that the prosecutrix came over to defendant's home every afternoon, and in answer to a question testified as follows: "Yes; I told her I knew she was hanging after my husband and I told her there is plenty of single men without picking on a married man with four children;" and that they had fussed about this continuously for the last two weeks before she went away on her trip.

The defendant testified that he met the prosecutrix by appointment near the theatre and they attended the first show, and then went to his home, arriving about 10 o'clock; that about 11 o'clock he dropped down on the bed and went to sleep, and did not wake up until the sheriff came to arrest him after 1:00 a. m. The sheriff testified that he found defendant dressed except for his coat and vest, and saw no signs of disorder. The defendant positively denies that on the night in question he had any instrument of any kind or any weapon in his possession, and that he had never owned a pistol or revolver in his life.

For the defendant, a reputable witness testified that he was sitting in his automobile, with his wife and mother, in front of the Overland theatre, and saw the defendant and prosecutrix walk up to the ticket window, where defendant bought tickets for the first show, and a second witness testified that he saw them leave the theatre together at 9:30 p. m. A middle-aged lady testified that her home was in the middle of the same block, near the home of the defendant, and that between 9:30 and 10 o'clock on the night in question she saw the defendant and the prosecutrix crossing the yard up to the defendant's back door, and defendant spoke to her and said she was working late, as she was out in her yard getting some clothes off of the line, and that they were just walking along side by side, and that she

heard no unusual disturbance or noise in the defendant's home that night.

Forty-two errors are set out in the defendant's motion for a new trial. The principal error alleged is in the refusal of the court to admit in evidence exhibit No. 11. The defendant testified that, when they returned from the picture show and reached the door of his house, he told her to go on over home, but she wanted to come in with him, which she did. He testifies that he went out to the toilet and when he came back she had written on both sides of a long envelope, which appears to have come to him from Montgomery-Ward, being postmarked January 22, 1935, and which was lying there handy, and this envelope, with her writing on it, is identified as exhibit 11. Defendant testifies that she handed it to him that night about 11 o'clock as he came back into the house, and that it is in her handwriting. Exhibit 11 was the most loving kind of a note, asking him to kiss and make up. The defendant testifies that, immediately after reading this exhibit No. 11, he said to her: "A. I told her I didn't want her over there no more and wanted her to go home, and she said, 'I won't go home until morning.'"

The record discloses as follows: "Mr. Dunbar: The defendant offers exhibit No. 11, identified by the defendant, Edmond Shineflew, for the purpose of showing the character, by the particular act, course of life and conduct, inconsistent with purity." To which offer the county attorney objected as follows: "To which the state objects for the reason it is incompetent, irrelevant and immaterial, and for the further reason this is not a complaint for statutory rape; that it is a complaint for attempted rape and the age or previous chastity or state of mind of the prosecutrix, Marguerite Conn, is immaterial." The court sustained the objection and refused to allow exhibit No. 11 to be received in evidence.

Exhibit No. 11, if written after they had been together in this room for more than an hour that night, was proper to show her mental attitude toward the defendant at that

time, and it was further competent as tending to negative the alleged use of force by the defendant and the resistance thereto of the prosecutrix. . The refusal to receive this exhibit No. 11 in evidence was prejudicial error.

The judgment and sentence are hereby reversed, and the cause remanded for further proceedings.

REVERSED.